NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


XIP TECHNOLOGIES, LLC,               )
                                     )
          Appellant,                 )
                                     )
v.                                   )
                                     )          Case No.  2D17-3718
ASCEND GLOBAL SERVICES, LLC,         )
                                     )
          Appellee.                  )
_____)

Opinion filed August 15, 2018.

Appeal from the Circuit Court for Lee
County; Alane C. Laboda, Judge.

John C. Webb of John Webb Legal Group,
P.L., Fort Myers, for Appellant.

Louis D. D'Agostino of Cheffy Passidomo,
P.A., Naples; and Richard Cimino of
Richard D. Cimino, P.A., Naples, for
Appellee.


SLEET, Judge.

        XIP Technologies, LLC, challenges the modified temporary injunction

entered against it and in favor of Ascend Global Services, LLC, in Ascend's action

against XIP for breach of contract, conversion, civil theft, and injunctive relief.  We

reverse.

XIP and Ascend entered into a contract by which Ascend would pay XIP a monthly fee in exchange for the use of XIP computer software that enabled Ascend to accept credit card payments from its customers. Pursuant to the contract, XIP's merchant services account captured all credit card purchases by Ascend customers and deposited all monies received into Ascend's account. XIP also tracked all of Ascend's customer information, customer purchases, and sales transactions and provided this client data to Ascend. For its part, Ascend was required to pay XIP a monthly base fee of $10,000, which was due on the fifth day of each month. In the event that Ascend did not pay the fee within five days of the due date, its license and access to the XIP software system would be suspended until all outstanding fees were paid in full. Ascend concedes that it was often late making its monthly fee payments and that it failed to make the $10,000 payments for June, July, and August 2017. However, at some point, XIP stopped communicating with Ascend's vendors, marketing representatives, and customers; stopped accepting credit card payments for products sold to Ascend's customers; and stopped transferring to Ascend funds from the sales of its products and memberships. Ascend alleges that this happened before it first failed to make its monthly fee payment in June 2017.

Ascend filed suit against XIP, asserting claims for breach of contract, conversion, civil theft, and injunctive relief. Ascend alleged that XIP breached the contract by failing to remit monies due, provide customer data, and accept credit card payments from Ascend's customers. Ascend's conversion and civil theft counts alleged that XIP failed to pay approximately $117,000 due to Ascend from XIP's merchant services account. As to the timing of the breaches and who breached first, Ascend's

complaint alleged that XIP started withholding customer data as early as February 2017.

After filing its complaint, Ascend filed a verified emergency motion for temporary injunction, seeking to prevent XIP from withholding revenue and customer data and to require XIP to continue providing the services spelled out in the parties' contract. The trial court referred the matter to a general magistrate, who held a hearing for which only Ascend was given notice. Following the ex parte hearing, the magistrate entered a report and recommendation in which it concluded that XIP's withholding of Ascend's net sales revenues and data files "has resulted in irreparable harm to" Ascend. The magistrate recommended injunctive relief, further concluding that Ascend "has no adequate remedy at law," that Ascend "has a likelihood of success on the merits for a permanent injunction," and that the temporary injunction will serve the public interest. The trial court adopted the report and recommendation and entered a temporary injunction. XIP moved to dissolve the temporary injunction, and following a hearing, the trial court entered an order granting in part and denying in part the motion. The court then entered a modified temporary injunction, which incorporated the factual findings and legal conclusions set forth in the magistrate's report and recommendation and provided as follows:

> 1. Defendant XIP Technologies, LLC, . . . [is] enjoined from:
> (i) withholding any net revenues belonging to plaintiff; (ii)
> withholding from plaintiff any records and genealogy data
> regarding sales transactions; (iii) refusing to respond to
> plaintiff's vendors and sales agents' requests for information
> and assistance; and (v) cutting plaintiff off from its computer
> software system and denying plaintiff its license rights under
> the License & Application Provider Agreement.

2. XIP is directed to forthwith pay over to plaintiff all of its net sales revenues it is now holding in the amount of $117,291.54 (i.e., XIP's receipts on behalf of plaintiff, minus XIP's fees minus a reserve of $37,155.36) and to continue paying over said revenues on a regular basis at least two (2) times weekly, so long as the parties continue to do business together.

3. Plaintiff shall forthwith pay defendant XIP the fees for its services rendered for May 2017, $1,000.00 and $10,000.00 for each of the months of June, July and August, 2017. Thereafter, plaintiff shall pay [d]efendants monthly invoices within thirty (30) days of receipt, so long as the parties do business with each other.

4. XIP is further directed to forthwith provide to plaintiff all of its genealogy data and customer proprietary information gathered since August 16, 2016.

5. XIP is further directed to forthwith reactivate its payment system, business management system and other software applicable to plaintiff's business.

6. A bond in the amount of Eighty Thousand Dollars ($80,000.00) shall be posted by plaintiff in order to make this Order effective.

XIP now appeals, first arguing that the trial court erred in directing it to pay $117,291.54 to Ascend because there was no showing of irreparable harm or a lack of an adequate remedy at law. We agree.

An order on a motion for temporary injunction entered by a trial court must be based on the likelihood of irreparable harm, the unavailability of an adequate remedy at law, the substantial likelihood of success on the merits, and considerations of public interest. Richard v. Behavioral Healthcare Options, Inc., 647 So. 2d 976, 978 (Fla. 2d DCA 1994). "The trial court has wide discretion to grant or deny a temporary injunction, and the appellate court will not intercede unless the grieving party clearly shows an abuse of discretion." Id.

- 4 -

In the temporary injunction here, the trial court adopted and incorporated the report and recommendation in which the magistrate concluded that the withholding of revenue and client data information caused Ascend irreparable harm for which Ascend has no adequate remedy at law. However, by directing XIP to pay Ascend approximately $117,000 for withheld sales revenues, the trial court demonstrated that Ascend has an adequate remedy at law in the form of money damages. By awarding that sum to Ascend at this stage of the proceedings, the trial court effectively decided the underlying breach of contract claim in Ascend's favor and awarded damages on the claim. This was an abuse of discretion.

XIP's defense below to the breach of contract claim is that Ascend breached first by failing to pay its $10,000 monthly fees and that such alleviated its obligation to perform under the contract. Accordingly, which party is entitled to all or any portion of the withheld revenues is an issue to be determined by the ultimate outcome of the lawsuit. If indeed XIP is determined to be in breach of the parties' contract, Ascend will have an adequate remedy at law in the form of damages to replace the withheld revenues. Because damages are available, there is no irreparable harm. See City of Miami Springs v. Steffen, 423 So. 2d 930, 931 (Fla. 3d DCA 1982) (reversing the entry of a temporary injunction that directed defendants to pay plaintiffs $53,491.21 in back wages and concluding there is "no irreparable harm for the purpose of a temporary injunction where the harm can be adequately compensated for by a monetary award"); see also B.G.H. Ins. Syndicate, Inc. v. Pres. Fire & Cas. Co., 549 So. 2d 197, 198 (Fla. 3d DCA 1989) (stating that "irreparable harm is not established where the potential loss can be adequately compensated for by a monetary award" and that an

"ability to obtain a money judgment . . . should a breach of contract be proven, is an adequate remedy at law"). Therefore, the trial court abused its discretion by including in the temporary injunction a direction that XIP pay Ascend $117,291.54 for withheld revenues.

In coming to this conclusion, we acknowledge Ascend's argument that because it is a multilevel business structure in which members are paid commissions from fees paid by other members, XIP's withholding revenue renders it unable to pay its members' commissions, resulting in the loss of members and the ultimate destruction of the business—which would be an irreparable harm with no adequate remedy at law. However, that argument is not supported by the evidence presented below. At the hearing on the motion to dissolve injunction, Ascend's CEO testified that he "had to keep on putting money into [the business] to pay the bills and to supply our members what was due them. . . . We're still doing [that] today." He responded affirmatively when asked if Ascend was satisfying its financial obligations to its members but added that if he had stopped putting his own money into the business, the company would have stopped operating. As such, the evidence below was that Ascend had obtained finances to continue operating albeit through a personal financial loss to its CEO. Accordingly, it was an abuse of discretion for the trial court to adopt the magistrate's unsupported factual finding that Ascend "has, by the conduct of XIP, been forced to suspend its operations." (Emphasis added.) And any personal funds Ascend's CEO has put into the business to make up for revenues collected but not remitted by XIP is a harm that is personal to him, not Ascend, and one that, like the withheld sales revenues, can be remedied by money damages. We therefore reverse the portion of the modified

- 6 -

temporary injunction that directs XIP to pay $117,291.54 to Ascend. Consequently, we also reverse the portion of the temporary injunction that directs Ascend to pay XIP the $10,000 fee it failed to pay in June, July, and August 2017 as some sort of equitable offset for the withheld revenues.

XIP next argues that the trial court abused its discretion in determining that it had caused Ascend irreparable harm for which there is no adequate remedy at law by withholding client data and refusing to continue to process Ascend's customers' credit card payments during the pendency of the underlying lawsuit. We cannot agree, however, because the unrefuted evidence below was that these actions by XIP would result in the total destruction of Ascend's business. This was sufficient to establish irreparable harm without an adequate legal remedy. See Richard, 647 So. 2d at 978 (concluding that a showing that "irreparable injury would occur" in the form of "the destruction of [the movant's] business" was a sufficient basis for a temporary injunction (emphasis added)).

Nevertheless, we must also reverse this portion of the temporary injunction because XIP is correct in arguing that the trial court failed to include the required findings of fact as to Ascend's likelihood of success on the merits and whether the temporary injunction was in the public interest. See Fla. R. Civ. P. 1.610(c) ("Every injunction shall specify the reasons for entry."); Randolph v. Antioch Farms Feed & Grain Corp., 903 So. 2d 384, 385 (Fla. 2d DCA 2005) ("An order granting a temporary injunction must strictly comply with [rule] 1.610. Of primary importance is the trial court's obligation to state sufficient factual findings in support of each element entitling a party to a temporary injunction."). "[T]he trial court's order must contain '[c]lear, definite,

- 7 -

and unequivocally sufficient factual findings [to] support each of the four conclusions necessary to justify entry of a preliminary injunction.' " Salazar v. Hometeam Pest Defense, Inc., 230 So. 3d 619, 621 (Fla. 2d DCA 2017) (alterations in original) (quoting Liberty Fin. Mortg. Corp. v. Clampitt, 667 So. 2d 880, 881 (Fla. 2d DCA 1996)).  This requires "more than parrot[ing] each tine of the four-prong test."  City of Jacksonville v. Naegele Outdoor Advert. Co., 634 So. 2d 750, 754 (Fla. 1st DCA 1994), approved, 659 So. 2d 1046 (Fla. 1995).

Here, the trial court incorporated the magistrate's report and recommendation, which with regard to these two prongs merely stated that there is a likelihood that Ascend will succeed on the merits and that the public's interest will be served by entry of the temporary injunction.  Such does not amount to strict compliance with rule 1.610(c)'s requirement to specify the factual basis for entry of the injunction.  As such, the temporary injunction is insufficient and must be reversed.  See Randolph, 903 So. 2d at 385 ("The single error of failing to provide sufficient findings requires us to reverse and remand for further proceedings.").

Accordingly, we reverse the portion of the injunction that directs XIP to pay $117,291.54 to Ascend for withheld net revenues and directs Ascend to pay $30,000 to XIP for unpaid fees.  Additionally, we reverse for lack of required findings the portions of the injunction that direct XIP to provide Ascend with all of its client data gathered since August 16, 2016, and to continue performing under the parties' contract during the pendency of the underlying lawsuit.  On remand, the trial court may again enter a temporary injunction directing XIP to provide Ascend with its client data and to continue

performing under the parties' contract but only if it includes the required findings as to each of the necessary four prongs.

Reversed and remanded.

SILBERMAN and CRENSHAW, JJ., Concur.